IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTONIO JUAN GONZALEZ, | )<br>) |
| Petitioner, | )<br>)  2:24-CV-00207<br>) |
| v. | )<br>) |
| SUPERINTENDENT TINA WALKER, *et al.*, | )<br>)<br>) |
| Respondents. | )<br>)<br>) |

## MEMORANDUM ORDER

**J. Nicholas Ranjan, United States District Judge**

Before the Court is the Magistrate Judge's Report and Recommendation (ECF 22), recommending that the Court grant Respondents' motion to dismiss (ECF 10) and deny Petitioner Antonio Juan Gonzalez's motion to stay and hold in abeyance (ECF 19). Mr. Gonzalez filed objections to the R&R, challenging both aspects of the Magistrate Judge's recommendation. ECF 24.

Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court must now conduct a *de novo* review of the R&R. The Court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. *See United States v. Raddatz*, 447 U.S. 667, 676 (1980) ("[I]n providing for a 'de novo determination' . . . Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations."). The Court may also recommit the matter to the magistrate judge with instructions.

After carefully considering the record and upon a *de novo* review of the R&R, the Court will sustain Mr. Gonzalez's objections as to equitable tolling, but will overrule Mr. Gonzalez's objections, and adopt the R&R, as to his motion to stay and

hold in abeyance. The Court will recommit the matter to the Magistrate Judge for further proceedings on the merits of Mr. Gonzalez's habeas claims.

I.  **Equitable tolling is justified based on Mr. Gonzalez's demonstrated diligence in the face of extraordinary circumstances.**

There is no question that Mr. Gonzalez's habeas petition was untimely by more than 13 months.[1] The question is whether Mr. Gonzalez can equitably toll the statute of limitations. The Magistrate Judge concluded "no," but the Court, on *de novo* review, respectfully disagrees.

Mr. Gonzalez argues that he deserves tolling because his court-appointed PCRA attorney failed to notify him when the Pennsylvania Superior Court reached its decision on his PCRA appeal. That started his habeas limitations clock. The Court agrees with Mr. Gonzalez that he was "effectively abandoned" by his court-appointed attorney, and that this rises to the level of "extraordinary circumstances" necessary to toll the limitations period. *Jenkins v. Superintendent of Laurel Highlands*, 705 F.3d 80, 89-90 (3d Cir. 2013) (citation omitted).

"A prisoner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Id*. at 89 (cleaned up). The Third Circuit has "recognized that in some cases an attorney's malfeasance, when combined with reasonable diligence on the part of the petitioner in pursuit of his rights, may warrant equitable tolling of the statute of limitations." *Ross v. Varano*, 712 F.3d 784, 800 (3d Cir. 2013). "One potentially extraordinary circumstance is where a prisoner is 'effectively abandoned' by his attorney." *Jenkins*, 705 F.3d at 89 (quoting *Holland v. Florida*, 560 U.S. 631, 651 (2010)). As the Supreme Court recognized in *Holland v.*

---

[1] The Court adopts the factual background of this case and the calculations of the AEDPA limitations period outlined in the R&R, and agrees with the Magistrate Judge's conclusion that Mr. Gonzalez's habeas petition is time-barred unless he qualifies for equitable tolling.

*Florida*, serious instances of attorney misconduct may be sufficiently egregious as to amount to "extraordinary" circumstances, and not just "a garden variety claim of excusable neglect[.]" 560 U.S. at 651-52 (cleaned up).

"There are no bright lines in determining whether equitable tolling is warranted in a given case. Rather, the particular circumstances of each petitioner must be taken into account." *Pabon v. Mahanoy*, 654 F.3d 385, 399 (3d Cir. 2011). "[I]n considering whether there could be equitable tolling, courts should favor flexibility over adherence to mechanical rules[,]" *Ross*, 712 F.3d at 799, and courts must exercise judgment "with awareness of the fact that specific circumstances, often hard to predict in advance, could warrant special treatment in an appropriate case." *Holland*, 560 U.S. at 650.

The Court summarizes below the timeline leading up to Mr. Gonzalez's filing of this instant petition (*see* ECF 22):

| Event | Date |
|---|---|
| Mr. Gonzalez is sentenced. | April 24, 2020 |
| 30-day period for filing direct appeal to Superior Court expired. | May 26, 2020 |
| Mr. Gonzalez filed his PCRA petition. | July 3, 2020 |
| Mr. Gonzalez requested a copy of "discovery packet" from his former trial counsel; he also requested information on progress of PCRA proceedings and a copy of a "discovery packet" from court-appointed PCRA counsel. | October 1, 2020 |
| Mr. Gonzalez wrote to the PCRA court, complaining that his PCRA attorney was not answering any of his letters or calls or visiting him. He claimed that he only briefly spoke with his PCRA counsel in November, and his counsel was only concerned with his testimony in his co-defendant's upcoming trial – not with his PCRA proceeding. Mr. Gonzalez asked for another PCRA attorney. | January 11, 2021 |
| PCRA petition is denied (following evidentiary hearing). | April 8, 2021 |

| | |
|---|---|
| Mr. Gonzalez (through PCRA counsel) filed Notice of Appeal to Superior Court. | April 16, 2021 |
| Superior Court affirmed denial of PCRA petition. | December 30, 2021 |
| Mr. Gonzalez, not having received any information on his PCRA appeal, wrote PCRA attorney asking about status of his PCRA appeal and requesting all paperwork/filings so that he could proceed *pro se*. | January 4, 2022 |
| Superior Court's decision became final. | January 31, 2022 |
| Deadline to file federal habeas petition. | December 26, 2022 |
| Mr. Gonzalez wrote PCRA attorney, informing him he was proceeding *pro se* and again requesting filings in his case and asking why he hasn't received anything yet. | February 15, 2023 |
| Mr. Gonzalez wrote the Clerk of Mercer County Courthouse to ask about status of PCRA proceedings and to request all filings/trial transcripts so that he can proceed *pro se*. | November 20, 2023 |
| Mr. Gonzalez wrote PCRA attorney to ask if he had filed a PCRA appeal, and if so, he wanted a copy of it, the state's response, and the court's opinion. | January 16, 2024 |
| Mr. Gonzalez, proceeding *pro se*, filed a motion with the PCRA court, requesting that the court order his PCRA attorney to turn over his complete legal file so that he could proceed *pro se*. He noted that PCRA counsel hadn't responded to any of the letters he sent. | January 22, 2024 |
| Mr. Gonzalez wrote the Prothonotary of the Superior Court requesting copies of all appellate briefs filed in his PCRA appeal and a copy of the Superior Court's December 30, 2021, decision. | January 30, 2024 |
| Mr. Gonzalez received a copy of his PCRA appeal for the first time, from the Pennsylvania Superior Court. | February 4, 2024 |
| This petition for habeas writ was filed. | February 7, 2024 |

As this timeline demonstrates, the Superior Court issued its decision on December 30, 2021. And Mr. Gonzalez's attorney did not tell him about the decision, not even after Mr. Gonzalez wrote to his attorney ***five days later*** asking about the appeal. *See* ECF 16-3 (January 4, 2022, letter to PCRA attorney: "I have not received any paperwork or information on my case from your office and was wondering why that is as my PCRA Appeal was filed back in April of 2021?"). He then followed that up with two other letters over the following months, which also went unanswered.

- 4 -

ECF 16-3 (February 2023, letter to PCRA attorney following up on his January 2022, letter, and requesting the Superior Court's ruling and related filings), ECF 16-4 (January 2024, letter to PCRA attorney: "This is my third letter to you to find out the status on my case and get paperwork on it. Did you file a PCRA Appeal to Pennsylvania Superior Court?").

Mr. Gonzalez's attorney's complete failure to respond to these letters and notify Mr. Gonzalez about something so important to his collateral-relief rights goes beyond excusable neglect, and rises to the level of attorney abandonment. Instructive in this regard is *Holland v. Florida,* 560 U.S. 631 (2010).

In *Holland*, the Supreme Court found that the petitioner's attorney's conduct amounted to extraordinary circumstances due, in part, to the attorney's: (i) failure to inform the petitioner in a timely manner about the "crucial fact" that the state supreme court had decided his case, despite petitioner's "many pleas for that information[,]" and (ii) failure to communicate with his client over a period of years, "despite various pleas" from the petitioner for his attorney to respond to his letters. *Id*. at 652. The attorney's various failures "violated fundamental canons of professional responsibility," including keeping clients "informed of key developments in their cases" and "never to abandon a client[,]" and "seriously prejudiced" the petitioner. *Id*. at 652-53.

In similar respects, Mr. Gonzalez was abandoned by his attorney, who not only failed to inform Mr. Gonzalez of the disposition of his PCRA appeal but also does not appear to have withdrawn from the case, or did anything to preserve Mr. Gonzalez's ability to appeal to the state Supreme Court or file a timely habeas petition. *See Foley v. Biter*, 793 F.3d 998, 1003 (9th Cir. 2015) (holding, in context of Rule 60(b)(6) motion, that counsel's failure to communicate with petitioner and notify him that his habeas petition was denied severed the principal-agent relationship between the petitioner and his attorney, and "[t]his failure to communicate, to preserve

[petitioner's] ability to appeal, and to withdraw from the case clearly constituted abandonment"); *Gibbs v. Legrand*, 767 F.3d 879, 886 (9th Cir. 2014) (finding that attorney's failure to notify petitioner of state supreme court's decision constituted abandonment that justified equitable tolling, and noting that attorney's failure to notify the court of his intention to withdraw deprived petitioner of the opportunity to proceed *pro se* and to personally receive docket notifications from the court); *Maples v. Thomas*, 565 U.S. 266, 283 (2012) (noting, in the context of whether state procedural bar to federal habeas review should be lifted, that "under agency principles, a client cannot be charged with the acts or omissions of an attorney who has abandoned him…[or] be faulted for failing to act on his own behalf when he lacks reason to believe his attorneys of record, in fact, are not representing him").[2]

The abandonment by Mr. Gonzalez's attorney rises to the level of "extraordinary circumstances." But to obtain equitable tolling, Mr. Gonzalez must

---

[2] In *LaCava v. Kyler*, the Third Circuit found that an attorney's failure to timely notify his client about the Pennsylvania Supreme Court's denial of his petition for permission to appeal did not constitute an extraordinary circumstance warranting equitable tolling. 398 F.3d 271, 276 (3d Cir. 2005). In light of *Holland*, *LeCava* appears to have been narrowed—at least in terms of the standard for attorney misconduct that could amount to extraordinary circumstances. For example, the Supreme Court in *Holland* rejected as too "rigid" the Eleventh Circuit's standard that an attorney's unprofessional conduct "cannot rise to the level of egregious attorney misconduct that would warrant equitable tolling unless the petitioner offers proof of bad faith, dishonesty, divided loyalty, mental impairment or so forth." 560 U.S. at 634 (cleaned up). And since *Holland*, the Ninth Circuit has held that the "[f]ailure to inform a client that his case has been decided, particularly where that decision implicates the client's ability to bring further proceedings *and* the attorney has committed himself to informing his client of such a development, constitutes attorney abandonment." *Gibbs v. Legrand*, 767 F.3d 879, 886 (9th Cir. 2014) (emphasis original); *accord Warren v. Sauers*, No. 12-1819, 2015 WL 778208, at *8 (M.D. Pa. Feb. 24, 2015); *Johnson v. Tritt*, No. 15-823, 2017 WL 771254, at *5 (W.D. Pa. Feb. 28, 2017) (Eddy, M.J.).

Further, even if *LaCava* remains fully intact after *Holland*, it is distinguishable; based on Mr. Gonzalez's attorney's repeated failures to respond to his letters, there is a clearer pattern of attorney abandonment here, unlike in *LaCava*.

also show that he exercised reasonable diligence. In the R&R, the Magistrate Judge concluded that Mr. Gonzalez failed to show that he pursued his rights diligently, given the time gaps between the letters that he sent to his attorney (and to the state courts) asking about his PCRA appeal. ECF 22, pp. 14-15. In his objections to the R&R, Mr. Gonzalez remarked that "[n]o amount of letters would have prompted a response from counsel as he totally ignored Petitioner." ECF 24, p. 1. The Court agrees with Mr. Gonzalez that he has demonstrated sufficiently reasonable diligence.

The diligence required for equitable tolling "is reasonable diligence, not maximum feasible diligence"—which means "the petitioner's overall level of care and caution in light of his or her particular circumstances." *Munchinski v. Wilson*, 694 F.3d 308, 330 (3d Cir. 2012) (cleaned up). The due-diligence inquiry is "a subjective test." *Ross*, 712 F.3d at 799. "If a petitioner did what he reasonably thought was necessary to preserve his rights based on information he received, then he can hardly be faulted for not acting more diligently than he did." *Munchinski*, 694 F.3d at 331 (cleaned up). The due-diligence obligation pertains to both the filing of the federal habeas petition and to the period during which the petitioner is exhausting state court remedies. *LaCava*, 398 F.3d at 277.

Importantly, Mr. Gonzalez's first letter to his attorney inquiring about the status of his PCRA appeal was sent just five days after the Superior Court affirmed the denial of his PCRA petition. While the timing of the letter appears to be serendipitous, it's tough to imagine a more reasonable act of diligence than to ask about the status of an appeal only a few days after the decision came out.

He then wrote another letter to his attorney approximately 13 months later. ECF 16-3. Nine months later, he wrote a letter to the Clerk of Court of Mercer County to ask about the status of the PCRA proceedings. ECF 16-12. This was followed by a third letter to his attorney two months later. ECF 16-4. Less than a week later, he filed a motion with the PCRA court for his attorney to "turn over his complete legal

file," including the Superior Court ruling. ECF 16-13. A little over a week after that, he wrote a letter to the Prothonotary of the Superior Court requesting filings from his PCRA appeal, including a copy of the Superior Court's decision. ECF 16-5.

The Court acknowledges the periods of inactivity between his letters, some much larger than others (*e.g.*, the 13-month gap between his first and second letters to his attorney). *Compare Holland*, 560 U.S. at 653 (reasonable diligence where petitioner "not only wrote his attorney numerous letters seeking crucial information and providing direction; he also repeatedly contacted the state courts, their clerks, and the Florida State Bar Association in an effort to have" his counsel removed from his case) *with LaCava*, 398 F.3d at 277 (no due diligence where petitioner allowed more than 21 months to lapse "from the filing of his petition for allowance of appeal until he inquired with the Pennsylvania Supreme Court's Prothonotary's Office as to its status").

But, while Mr. Gonzalez certainly *could have* contacted his attorney or the courts more frequently, the Court struggles to think of what else a petitioner in Mr. Gonzalez's shoes should have done to show that he diligently attempted to determine the status of his appeal. In the Court's view, the many letters that Mr. Gonzalez sent to his attorney and the courts already reflect his perseverance, and Mr. Gonzalez—who could not anticipate when the Superior Court's decision would issue—should not be expected to keep pestering his lawyer (at a greater rate than he already did), when his lawyer was already non-responsive to his first letter asking about the status of his PCRA appeal in the Superior Court. And as the Court noted above, Mr. Gonzalez's diligence in inquiring about the status of his appeal is apparent in the timing of his first letter to his attorney, just days after the Superior Court affirmed the denial of his PCRA petition.

Further, as early as January 2021 (several months after Mr. Gonzalez filed his *pro se* PCRA petition), Mr. Gonzalez raised in a letter to the PCRA court that his

appointed attorney had "refused to answer any of [his] letters or [his] calls" regarding his petition, and that when they did briefly speak, his attorney "was only concerned with [his] potential testimony in [his] co-defendant's upcoming trial, not [his] PCRA" petition.[3]  ECF 16-2.  Thus, in measuring Mr. Gonzalez's perseverance, the Court takes into account this impediment that Mr. Gonzalez faced with being assigned an attorney that seemingly had issues communicating with his client from early on.

      Put differently, a reasonable person in Mr. Gonzalez's shoes would know that he was dealing with a totally unresponsive attorney, who cared little of his case.  His unsuccessful attempt to get that attorney replaced likely did not help his relationship.  By the time the appeal was pending, a reasonable person probably would infer that constant pestering of the attorney would very likely backfire, and likely be met with even more unresponsiveness or annoyance.  What Mr. Gonzalez did was politely and periodically inquire about the appeal, right after the decision happened to come down, and then periodically thereafter.  Sure, he could have sent daily letters, asking "when will my appeal be decided? when will my appeal be decided?", but only an unreasonable person would do that because everyone knows that there is no answer to that question.  *Compare Gibbs*, 767 F.3d at 890 ("A reasonable litigant in the petitioner's situation who is represented by experienced counsel, if asked about the status of his. . . lawsuit, would be justified in replying, 'My lawyer is handling it.'" (cleaned up)).  Under these particular circumstances and based on the course of dealing presented by this case, Mr. Gonzalez's diligence in inquiring about the status of his appeal was reasonable.

      The Court also notes that, upon finally receiving a copy of the denial of his PCRA appeal from the Superior Court in February 2024, Mr. Gonzalez diligently filed

---

[3] In this same letter, Mr. Gonzalez requested the PCRA court to remove the attorney from his case, or assign him another one.  The record isn't clear as to the proceedings related to his request, but evidently, his attorney was not removed from the case.

- 9 -

this habeas petition three days later—and also wrote the Clerk of Court of Mercer County that he was proceeding *pro se* and requested copies of his written plea colloquy and "all mental health/psychiatric reports/evaluations done on me in connection with this case"—just days later. ECF 16-12. This supports a finding of reasonable diligence, as well. *See Warren*, 2015 WL 778208, at *7 (finding reasonable diligence where petitioner protectively filed a premature federal habeas petition; wrote directly to the prothonotary to determine the status of his PCRA proceedings in the state supreme court after having received no response from his court-appointed PCRA counsel; and, once he learned of the denial of allocator, submitted the instant federal habeas petition just 8 days later).

In sum, this is a case where "principles of equity would make the rigid application of a limitation period unfair." *Pabon*, 654 F.3d at 399 (cleaned up). The factual record is sufficient to show that Mr. Gonzalez was abandoned by his attorney but still exercised reasonable diligence. This meets the standard for equitable tolling.

## II. The Court will deny Mr. Gonzalez's request to stay and hold this case in abeyance.

In the R&R, the Magistrate Judge concluded that Mr. Gonzalez has not shown good cause to justify a stay-and-abeyance; Mr. Gonzalez asserts that he obtained newly discovered evidence recently (in 2024) that supports his claim that his guilty plea was not an informed and intelligent decision, but does not provide any information on what the newly discovered evidence is or why it could not have been discovered through his own diligence. ECF 22, p. 17. The Magistrate Judge also reasoned that the claims raised in the instant habeas petition are time-barred, and that Mr. Gonzalez can file another habeas petition after he exhausts the new claim, if it constitutes a "second or successive" habeas petition under 28 U.S.C. § 2244(b).

Since the issuance of the R&R, Mr. Gonzalez filed a second PCRA petition on March 27, 2025.[4] The PCRA Court issued a notice of intent to dismiss the second PCRA petition on April 2, 2025. Mr. Gonzalez filed a response to the PCRA Court's intent to dismiss on April 13, 2025. So the second PCRA petition remains pending in state court. In his objections to the R&R, Mr. Gonzalez hasn't provided any details on the nature of the newly discovered evidence, only stating that it "will be made clear in his filing of a second PCRA." ECF 24, p. 1.

A "stay and abey" procedure is appropriate in limited circumstances where: "(1) good cause exists for the petitioner's failure to exhaust his claims; (2) the unexhausted claims are not plainly meritless; and (3) the petitioner has not engaged in dilatory or abusive tactics." *Rhines v. Weber*, 544 U.S. 269, 277 (2005).

The Court agrees with the R&R's recommendation to deny the motion for stay and abeyance, and overrules Mr. Gonzalez's objections. Mr. Gonzalez "bears the ultimate burden of demonstrating his entitlement to a stay[,]" but hasn't provided any substantive information about the newly discovered evidence or the new claim he raised in the second PCRA petition. *Tiggs v. Johnson*, No. 15-8664, 2019 WL 762671, at *2 (D.N.J. Feb. 21, 2019). The Court has no basis to determine whether the claim raised in the second PCRA petition would fall under an exception to the PCRA time-bar, especially if this claim relates to his guilty plea. Mr. Gonzalez has not "demonstrated good cause for not previously asserting the unspecified claim[ ] raised in the [second PCRA petition]," and the Court is also unable to determine whether the unexhausted claim is "plainly meritless." *Id.* (cleaned up). So the Court denies Mr. Gonzalez's motion to stay this habeas proceeding, but without prejudice to the Magistrate Judge reconsidering Mr. Gonzalez's request to stay, in the course

---

[4] *See* Docket, No. CP-43-cr-0002188-2019, https://ujsportal.pacourts.us.

- 12 -

of considering the merits of the instant habeas petition, if Mr. Gonzalez presents more information about the unexhausted claim and his second PCRA petition.

* * *

**AND NOW**, this **8th day of May, 2025**, the Court sustains in part and overrules in part Mr. Gonzalez's objections (ECF 24), and partially adopts the R&R (ECF 22). Respondents' motion to dismiss (ECF 10) is **DENIED** and Mr. Gonzalez's motion for stay and abeyance (ECF 19) is **DENIED**. The matter is recommitted to the Magistrate Judge for further proceedings.

BY THE COURT:

/s/ *J. Nicholas Ranjan*
United States District Judge

cc:
Antonio Juan Gonzalez
QD0124
SCI Fayette
50 Overlook Drive
LaBelle, PA 15450